## APPEAL OF LEXINGTON BREWING CO.

Docket No. 4934.  Promulgated October 10, 1927.

1. OBSOLESCENCE OF TANGIBLE PROPERTIES DUE TO FEDERAL PROHIBITION.—Between October 24, 1919, and January 16, 1920, petitioner discontinued the use of certain tangible assets having a depreciated cost on December 31, 1919, of $37,231.18. On December 31, 1919, it also owned certain saloon fixtures having a depreciated cost of $25,153.52. After January 16, 1920, it continued to use some of these fixtures in manufacturing lager and near beer, gave some away, broke up some for kindling wood and sold some for $75. Evidence did not show that at the close of 1919 petitioner had any special knowledge which would lead it to believe it would never again use the discarded facilities. *Held,* in the absence of such evidence petitioner is not entitled to an allowance for obsolescence.

2. INVESTED CAPITAL.—Petitioner claimed the Commissioner erred in reducing invested capital on account of alleged insufficient depreciation sustained in prior years. *Held,* that the mere introduction in evidence of statements setting forth what the books show as to amounts charged off in prior years is insufficient to rebut Commissioner's *prima facie* case.

*Fred W. Hart, C. P. A.,* for the petitioner.
*John D. Foley, Esq.,* for the Commissioner.

The petitioner seeks a redetermination of its income and profits taxes for 1919, for which year the Commissioner has determined a deficiency in the amount of $28,428.29. The issues are: (1) The

amount of the depreciation deduction to which the petitioner is entitled; (2) the correctness of the Commissioner's action in disallowing a deduction for obsolescence of tangible properties alleged to have been sustained as the result of Federal prohibition legislation; and (3) the correctness of his action in reducing invested capital by $70,028.07 because of alleged insufficient depreciation charged off in prior years. As set forth in the deficiency notice, the Commissioner allowed a depreciation deduction in the amount of $44,759.62. The petitioner alleged that it was entitled to a deduction of $57,254.93 for depreciation, which the Commissioner conceded at the hearing. The first issue is, therefore, removed from controversy.

### FINDINGS OF FACT.

Petitioner is a Kentucky corporation with its principal office at Lexington. In 1924, its name was changed to the Dixie Realty & Products Co. It owned buildings, machinery, and equipment which were designed and used for the purpose of brewing beer, and fixtures which were used in saloons where its products were sold. The capacity of its brewery was approximately 75,000 barrels per year. In 1918, petitioner commenced the manufacture of near beer, and it sold in that year 2,800 barrels of that product. During the year under consideration, petitioner manufactured and sold lager and near beer.

Between October 24, 1919, and January 16, 1920, petitioner discontinued the use of certain machinery and equipment comprising approximately seven-twelfths of the total facilities employed for brewing beer. None of the machinery and equipment, the use of which was then discontinued, was thereafter used for any purpose. The depreciated cost and book value of the discontinued machinery and equipment was $37,231.18 at December 31, 1919.

On December 31, 1919, petitioner owned saloon fixtures of a depreciated cost and book value of $25,153.52. These fixtures were located in saloons in which the products of petitioner's brewery were dispensed. After January 16, 1920, the effective date of the Eighteenth Amendment, and enforcement legislation, some of these fixtures were continued in use, some were given away, some broken up for kindling wood, and some sold for the sum of $75.

In or about June, 1922, petitioner's brewery was seized by Federal authorities because petitioner was selling lager beer containing an alcoholic content in excess of that allowed by law, and thereafter the manufacture and sale of lager and near beer was discontinued.

In its return for the year under consideration, petitioner claimed a deduction from income of $114,787.69 for depreciation and obsolescence of the physical properties used in its business. The Commis-

sioner allowed $44,759.62 for depreciation and nothing for obsolescence, and disallowed the remainder of the amount claimed amounting to $70,028.07. As heretofore stated, the Commissioner conceded during the hearing that petitioner is entitled to a deduction of $57,254.93 for depreciation.

With respect to the depreciable properties employed in petitioner's business, its books of account show the following:

| | Balances per books Jan. 1, 1913 (depreciated cost) | Additions at cost Jan. 1, 1913, to Jan. 1, 1919 | Depreciation charged off Jan. 1, 1913, to Jan. 1, 1919 | Depreciated cost per books Jan. 1, 1919 |
|---|---|---|---|---|
| Buildings | $166,066.17 | $1,335.08 | $9,931.25 | $157,470.00 |
| Machinery and equipment | 123,822.70 | 11,458.14 | 38,749.09 | 96,531.75 |
| Office fixtures | 1,237.40 | 505.25 | 534.85 | 1,207.80 |
| Saloon fixtures | 45,217.00 | 46,084.53 | 56,816.38 | 34,485.15 |
| Agency equipment | 9,514.15 | 4,745.19 | 10,100.32 | 4,159.02 |
| Horses and wagons | 4,605.70 | 804.32 | 2,668.02 | 2,742.00 |
| Automobile trucks | | 4,084.05 | 1,474.40 | 2,609.65 |
| Cooperage | 14,461.30 | 13,338.90 | 15,232.67 | 12,567.53 |
| Totals | 364,924.42 | 82,355.46 | 135,506.98 | 311,772.90 |

The Commissioner has held that the actual depreciation sustained in years prior to 1919 exceeded by $70,028.07 the depreciation charged off on the books of account, and, accordingly, he has included the above listed properties in invested capital at an aggregate value of $241,744.83, which is $70,028.07 less than the book value thereof at the beginning of the year.

OPINION.

GREEN: The net income shown in the deficiency notice should be reduced by the sum of $12,495.31, being the amount of the additional depreciation which the Commissioner has conceded.

Petitioner contends that machinery, equipment, and saloon fixtures, having a total depreciated cost and book value of $62,384.70, and having a total salvage value of $6,185.85, were rendered obsolete and useless by the advent of national prohibition; and that it should be permitted to write off against income, ratably over the period February 1, 1918, to January 16, 1920, the loss occasioned by the aforesaid event in the following amounts: $56,198.85, representing the difference between the depreciated cost and estimated salvage value, of which $28,697.28, or 12/23.5 of the whole, is allocated to the year 1919. There appears to be no question as to the extent of the loss which the petitioner suffered at some time or other, through loss of useful value of certain of its physical assets which were rendered useless by national prohibition. The Commissioner, as shown in the deficiency notice, has allowed a substantial deduction from the income for 1920 on account of such a loss. The real question which we are

called upon to decide is whether the petitioner, at the close of 1919, had substantial reasons for believing that the assets would become obsolete prior to the end of their ordinary useful life, and knew, to a reasonable degree of certainty, under all the facts and circumstances, when that event would likely occur. If it had such belief and knowledge, then it would appear that petitioner is entitled to a deduction from the income of 1919 for obsolescence of those assets. The evidence does not warrant an affirmative answer to the question as above stated. It goes no further than to show that at December 31, 1919, petitioner had discontinued the use of certain machinery and equipment; that some time after January 16, 1920, certain other assets, referred to as saloon fixtures, were discarded, given away, or sold at a loss; and that subsequent events have demonstrated that these assets had become obsolete for the manufacture and sale of near beer as well as for every other purpose. At the close of 1919, petitioner was engaged in the manufacture of near beer, the processes of which required the use of the same facilities as were used in making real lager beer. Further than that, petitioner continued to manufacture and sell real lager beer, for beverage purposes, in violation of prohibitory legislation, until in or about the month of June, 1922, when its plant was seized or otherwise put under legal restraint by Federal authorities. If petitioner's executive officers, at the close of 1919, were in possession of any special knowledge that the public thirst or appetite for the potent brew of malt and hops could not be satisfied with the dealcoholized or less stimulating brew, or that the demand for the illegal product which they were marketing would be greatly lessened, so that the facilities discontinued in use would have no further useful value in the business, the evidence is wholly insufficient to show that such was the case. We can not credit them with power, in 1919, to prophesy that the public would not take to petitioner's products. Under the circumstances we can not disturb the Commissioner's action in disallowing the claimed deduction for obsolescence.

The last issue is that relating to the Commissioner's action in reducing invested capital by $70,028.07 on account of his conclusion that insufficient depreciation was charged off in prior years. The only evidence bearing upon this issue which has been submitted by the petitioner is an exhibit setting forth what the parties agree are the amounts of depreciation charged off on the books between January 1, 1913, and December 31, 1918, and the statement of the sole witness, who is petitioner's president and general manager, that the plant was in good working condition when he became connected with the company in March, 1919. However, the witness testified further that he had no knowledge as to what took place, in the way of charging off depreciation, prior to the time he became connected with the

petitioner. The petitioner can not rebut the *prima facie* case by the mere production in evidence of statements setting forth what the books show as to amounts charged off in prior years. As we stated in *Appeal of Mandel Brothers*, 4 B. T. A. 341, 355, "A line of reasoning which concluded that the presumption of the correctness of the Commissioner's determination is rebutted by the production of the very evidence which the Commissioner examined and found to reflect an unreasonable allowance and so found not from the books themselves, but from the surrounding circumstances, would be most peculiar." And in *Union Paving Co.* v. *Commissioner*, 6 B. T. A. 527, we said: " In every appeal in which the board has reversed the action of the Commissioner on issues similar to this, the petitioner has proved that the amount of depreciation written off was, in view of all the facts, a reasonable allowance for the exhaustion, wear and tear of assets." There is no evidence upon which we can base findings of fact adverse to the determination of the Commissioner.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by STERNHAGEN, ARUNDELL, and LANSDON.